UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                               Plaintiff,

DECISION AND ORDER

09-CR-6071L

                 v.

LAVALLE D. CHESTNUT,

                               Defendant.

_____

        Lavalle Chestnut ("Chestnut") was sentenced by this Court on June 21, 2018, principally to a term of imprisonment of one year and one day based on his guilty plea to a violation of supervised release. This Court ordered that the sentence was to run consecutively to a New York State Supreme Court conviction for Sexual Abuse in the First Degree of 2 years imprisonment, plus 10 years of post-sentence supervision.

        Chestnut has completed his state sentence and apparently lapsed into Federal custody on October 11, 2019. He is currently serving this Court's sentence and is housed at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.

        Chestnut advises that it is expected that he will complete his Federal sentence in about four months on August 17, 2020. The Court was also advised that Chestnut is "eligible" for home confinement in about three months on July 13, 2020.

        By letter motion dated April 1, 2020 (Dkt. #919), Chestnut, represented by the Federal Public Defender, has moved the Court to modify Chestnut's sentence to "time served to be followed by a term of home confinement" pursuant to 18 U.S.C. § 3582(c)(1)(A). Alternatively, Chestnut requests

that the Court "recommend" to the Bureau of Prisons ("BOP") that Chestnut be released immediately to home confinement.

The basis for Chestnut's motion is, of course, the world-wide public health crisis involving the COVID-19 Coronavirus.  The unfolding tragedy has claimed thousands of lives throughout the world and specifically, in and about the Metropolitan New York City area.  The daily news reports are staggering.  In a nutshell, Chestnut claims that he is very susceptible to being infected by the virus confined as he is at the MDC.  He and other prisoners there are unable to do all the cleaning and distancing protocols suggested by medical experts that are necessary to dampen the spread of the virus.

The Government, not surprisingly, opposes the motion in a 14-page filing dated April 10, 2020.  (Dkt. #921).  The Government objects on both procedural and substantive grounds.  The Government contends that Chestnut has failed to exhaust his administrative remedies: specifically, he failed to first petition the BOP for "compassionate release" under provisions of 18 U.S.C. § 3582(c).  The Government contends that such an application is mandatory and that this Court lacks jurisdiction to entertain Chestnut's motion now.  On the merits, the Government contends that relief would only be warranted upon a showing of "extraordinary and compelling" circumstances and that Chestnut has failed in his application to carry his burden in that regard.

Defendant filed a detailed Response to the Government's opposition on April 15, 2020. (Dkt. #922).  Defendant contends that the Court does have jurisdiction to entertain the motion and that extraordinary and compelling reasons exist for releasing defendant to home confinement.

There are several principles and issues at play here.  First of all, generally once a sentence has been imposed and judgment entered, the Court cannot modify it, except under certain limited circumstances, many of which are not applicable here.  It is true that the legal landscape has changed

somewhat with the recent passage of the First Step Act of 2018 in December 2018.  The Act made

several substantive and procedural changes: one dealt with motions for a sentence reduction under

18 U.S.C. § 3582(c)(1)(A).  Prior to the Act's enactment, only the Director of the BOP could initiate

such motions to reduce previously-imposed sentences, and it is apparent that the BOP rarely did so.

Now, a moving inmate does not need Bureau of Prison's permission but can file his own motion.

But, as the Government points out in detail here, there is a condition precedent to such a filing: the

inmate first seek relief from the Director of the BOP for such compassionate release.

For the first time in his response (Dkt. #922) filed on April 15, 2020, defendant claims that

on April 8, 2020 Chestnut submitted his request for relief to Derek Edge, Warden of MDC.  Counsel

for Chestnut asserts that she made the same request two days earlier on April 6.  (Defense Response,

Dkt. #922, p.5).  Neither the Warden, nor the BOP has responded but the statute affords them 30

days to do so.  18 U.S.C. § 3582(c)(1)(A).

The Court is not unfamiliar with the many articles and opinions as to the potential spread of

the virus in closed settings such as a prison.  The MDC is a very large facility housing

approximately 1700 inmates.  This country is now in the midst of a pandemic of staggering

virulence, which we have never faced before.  These are extraordinary times, perhaps warranting

unusual relief.

So, what to do.  Obviously, as the Government is quick to note, emptying all of the jails will

not happen.  That is obviously not practicable or desirable.  But I believe that the Government has

overstated the consequences for failing to exhaust administrative remedies.  I think there is a split of

authority in the Second Circuit and elsewhere as to whether this Court lacks jurisdiction in such a

circumstance.  In fact, as pointed out in Chestnut's Response, there are numerous courts, including

several from the Second Circuit that determined the "exhaustion" request is not jurisdictional and

based on principles of waiver, futility or estoppel, the Court can deal with the merits of the application. This would seem to be especially so in the extraordinary times caused by the pandemic.

According to Chestnut, his application for release has been pending with the BOP for about 10 days, as of April 16, 2020. I recognize that the BOP prior to the enactment of the First Step Act rarely granted such motions. And I am not insensitive to Chestnut's suggestion that such an application could well be futile. On the other hand, I do think the both Government and the BOP must recognize this as a terrible medical situation facing especially those who are incarcerated.

The Government's filing in this case suggests that the BOP has taken many steps to do what is necessary to make the inmate population safer. The Government suggests that even before the medical crisis began, the BOP has consented to reduce sentences in 55 cases. That certainly is not a substantial number but one would think in light of the obvious nature of the COVID-19 crisis, the BOP would be even more willing to grant release to certain inmates.

According to the Government's filing, on March 26, 2020, no less an authority than the Attorney General of the United States directed that the BOP to prioritize the use of its authority to place prisoners in home confinement. The recent so-called CARES Act enacted March 27, 2020 also authorizes the Attorney General to maximize the amount of time to place prisoners in home confinement Does the BOP intend to follow those directives or not.

The Director of the BOP, therefore, has now received wide authority and specific encouragement to remove inmates from the prison and in appropriate cases and place them in home confinement. The BOP could ignore the strong directives to act appropriately in this medical crisis. One hopes that is not the case. Whether the BOP takes such compassionate action of course remains to be seen but it would seem to make eminent sense to do so especially with an inmate like Chestnut.

4

From Chestnut's application, he appears to have a stable residence available and his remaining sentence is quite short.  This is not a case where the BOP would be releasing someone from a lengthy term of court-imposed punishment.  Chestnut is not more dangerous today than he would be a few months from now when he would conclude his sentence.  Furthermore, Chestnut will not be supervised by Federal Probation officers but will be monitored by the New York State Probation officers based on the New York State judge's sentence.

I believe that the best course is to afford the BOP another 10 days from entry of this Decision and Order to rule one way or the other on Chestnut's request for release to home confinement.  It would see to be a simple task based on the specific directive of the Attorney General, the CARES Act and the commonsense benefit of reducing the prison population to help combat the COVID-19 crisis.  Ten days should be enough.  In this medical crisis, every day counts and insisting on waiting 30 days from application suggests futility and unnecessary prejudice to Chestnut.

In addition, I do not see Chestnut to be an emergency situation.  I note that Chestnut carries the burden of demonstrating extraordinary and compelling reasons to modify the Court's sentence and release him.  Every inmate housed at MDC faces some risk of exposure in that facility as do many individuals not incarcerated.  The Government has pointed out in its response to the motion here the significant steps the BOP at MDC has taken to address medical issues.  In addition, one needs to focus on Chestnut's particular circumstance.  Chestnut does not appear to be a person highly susceptible to being infected.  In other words, he is not elderly (he was 35 at the time the Presentence Report was prepared) and therefore is not in the target group for the elderly.  In addition, there is no indication in his application to this Court that he has some significant underlying medical condition such as diabetes, heart condition or lung maladies.  Yes, Chestnut does face some risk at MDC but based on his particular circumstance, it does not appear that he has

demonstrated extraordinary and compelling reasons for this Court to modify his sentence now at least without giving the BOP the first opportunity to review the application.

So, the Court declines to grant Chestnut's motion at that this time and will await the determination by BOP.  There certainly seems to be a strong basis to remove Chestnut from the MDC based on the several practicable reasons I adverted to above.  On balance, I think, under all the circumstances, it is best to give the BOP a reasonable opportunity to review the application for relief in the first instance.

## CONCLUSION

Defendant Lavalle Chestnut's motion (Dkt. #919) to modify this Court's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is deferred at this time pending a decision from the BOP within ten (10) days of Chestnut's administrative request for relief.

The Government is directed to promptly provide this Decision and Order with counsel for the BOP at the MDC, as well as MDC Warden Derek Edge.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      April 16, 2020.